FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 DEC -2 PM 3: 25

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In the Matter of the Complaint of Bruce | * | CIVIL ACTION |
| Investment Co., Inc., as the Owner of | * | |
| M/V SUPPLIER, and Gulf Tran, Inc., | * | |
| as the Operator of M/V SUPPLIER, Praying | * | NUMBER 00-0372 |
| for Exoneration from or Limitation of Liability | * | |
| Pursuant to 46 U.S.C. Section 183 *et seq.* | * | SECTION S MAG. 2 |

### SUGGESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW BY CLAIMANT, TODD BALLARD HINES

Suggested Findings of Fact

1. On December 24, 1998, claimant Todd Hines and his crew were sent from Block 354 Ship Shoal in the Gulf of Mexico to Port Fourchon, La., a distance of more than 80 nautical miles.

2. Hines and his crew were transported by an offshore supply vessel, the M/V SUPPLIER, which was owned by Bruce Investment Co., Inc. and operated by Gulf Tran, Inc. Claimant Exhibit C. The M/V SUPPLIER is an inspected offshore supply vessel that is 106.9 feet long and operates at a maximum speed of ten knots. The captain of the M/V SUPPLIER did not object to transporting the workers despite rough weather conditions.



3. The weather on December 24, 1998, was overcast and raining with strong winds from the north. Sea conditions in the morning as observed by Gulf Tran's captain were six feet to nine feet and the winds were 35 MPH from the North. The M/V SUPPLIER left with nine offshore workers from the platform in Ship Shoal Block 354 at 10:00 AM, heading on a course of 27 degrees, just east of north. The announcement required by 46 CFR § 131.320 was not made by the vessel and the workers were not informed of the information on the Emergency Instructions placard regarding rough weather.

4. After the vessel left the platform the captain turned over the wheel to the mate who admitted that she was still somewhat green. The captain then went to his bunk. The offshore workers attempted to bunk down for the ride to shore that was expected to last 8 or 9 hours. There were not enough bunks for all of the offshore workers.

5. A crew member of the vessel opened the settee/bunk located in the salon area of the vessel at midship on the starboard side. The settee/bunk on the M/V SUPPLIER looked similar to Claimant Exhibit F1 and F3. That crew member offered the use of the bunk to the offshore workers.

6. Sometime before 1:15 PM Todd Hines climbed on the upper portion of the settee/bunk to attempt to sleep on the ride to shore. At 1:15 PM the settee/bunk that claimant was lying on ripped from the wall as a result of the rough weather conditions. Mr. Hines fell, striking the edge of the seat below and landing on the floor of the salon area.

7. At the time of the incident the vessel was traveling 9.5 knots with 7 to 9 foot seas from the north striking the vessel on the port quarter. This caused the M/V SUPPLIER to pitch and roll severely as described by the offshore workers Eric Pitman and Richard Sonnier. The movement of

the vessel was such that it made it difficult to walk in the salon area and would actually bounce the passengers around.

8. The accident was reported and incident reports and Coast Guard reports were prepared describing the incident as explained by Todd Hines.

9. Claimant sustained an injury to his neck and back that required two separate surgeries. This has resulted in permanent restrictions to sedentary type work. He has had a two level anterior cervical fusion and a single level anterior lumbar fusion. His general damages for these injuries are $250,000.00.

10. Prior to this incident claimant was a relatively high wage earner. His earnings were derived from mostly manual labor type jobs which he can no longer perform.

11. Claimant is currently undergoing vocational rehabilitation that should result in his being able to earn $12.00 per hour or approximately $25.000.00 per year. This will still result in a significant loss of wage earning capacity in the amount of $300,000.00.

12. From the date of the accident to the date of the trial claimant has lost $150,000.00 which results in a total loss of earnings past and future in the amount of $450,000.00.

13. Mr. Hines' medical expenses were $83,610.47.

14. Bruce Investment Company, Inc. and Gulf Tran, Inc. had privity and knowledge of circumstances that caused this incident through its president Ross Bruce. Mr. Bruce was unaware of the Coast Guard regulations applicable to this offshore supply vessel in reference to the safety announcements that were required. He did not require such announcements and did not confirm that they were in fact being made by his crew. Therefore, plaintiffs are not entitled to limit their liability.

15. LWCC has paid $83,610.47 in medical benefits and $119,098.02 in weekly indemnity benefits. Its policy of insurance contained an endorsement that prevented subrogation if required by the contract under which its insured was working. Its insured was working under such a contract. The schedule that listed those companies for whom subrogation would be waived simply stated "Blanket Waiver". As a result of this endorsement LWCC cannot intervene to seek reimbursement.

Suggested Conclusions of Law

1. "The owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." <u>Kermarec v. Compagnie Generale Transatlantique</u>, 358 U.S. 625, 632, 79 S.Ct. 406, 410 (1959). Shipowners are held to a high degree of care to their passengers. <u>Smith v. Southern Gulf Marine Co. No. 2, Inc.</u>, 791 F.2d 416 (5th Cir.1986). The circumstances or factors which affect the degree of care owed by the shipowner include the experience of the crew, the type of carrier involved, the dangers to the passengers peculiar to that type of carrier, the carrier's degree of control over the passengers, and the carrier's ability to take precautions against such dangers. <u>Smith v. Southern Gulf Marine Co. No. 2, Inc.</u>, 791 F.2d 416, 421 (5th Cir.1986).

2. The ultimate decision as to whether or not to proceed in transporting crew to rig via crew boat despite adverse weather conditions rests with the vessel captain. *See* <u>Smith v. Southern Gulf Marine Co. No. 2, Inc.</u>, 791 F.2d 416, 418 (5th Cir.1986)

3. In addition to this general duty of care there is a specific duty of care created by Coast Guard regulation contained in 46 CFR § 131.320 which states:

Safety orientation for offshore workers.

(a) Before a vessel gets under way on a voyage, the master shall ensure that suitable public announcements are made informing each offshore worker of--
    (1) In general terms, emergency and evacuation procedures;
    (2) Locations of emergency exits and of embarkation areas for survival craft;
    (3) Locations of stowage of lifejackets and immersion suits;
    (4) With demonstration, proper method or methods of donning and adjusting lifejackets and immersion suits of the type or types carried on the vessel;
    (5) Locations of the instruction placards for lifejackets and other lifesaving devices;
    (6) Explanation that each offshore worker shall don an immersion suit and a lifejacket when the master determines that hazardous conditions do or might exist but that offshore workers may don lifejackets whenever they feel it necessary;
    (7) Which hazardous conditions might require the donning of lifejackets and immersion suits;
    (8) Types and locations of any other lifesaving device carried on the vessel;
    **(9) Locations and contents of the "Emergency Instructions" required by § 131.330;**
    (10) Survival craft to which assigned;
    (11) Any hazardous materials on the vessel; and
    **(12) Any conditions or circumstances that constitute a risk to safety.**
(b) The master of each vessel shall ensure that each offshore worker boarding the vessel on a voyage after the initial public announcement has been made, as required by paragraph (a) of this section, also hears the information in paragraph (a) of this section. (Emphasis added)

4. The Emergency Instructions placard required by 46 CFR 131.330 referred to in paragraph (9) states in part:

The following are the recommended format and content of the placard for emergency instructions:
EMERGENCY INSTRUCTIONS
(a) **Rough weather at sea**, crossing of hazardous bars, or flooding.
    (1) Close each watertight and weathertight door, hatch, and air-port to prevent taking water aboard or further flooding in the vessel.

  (2) Keep bilges dry to prevent loss of stability from water in bilges. Use power-driven bilge pump, hand pump, and buckets to dewater.
  (3) Align fire pumps to serve as bilge pumps if possible.
  (4) Check, for leakage, each intake and discharge line that penetrates the hull.
  **(5) Offshore workers remain seated and evenly distributed.**
  (Emphasis added)

5. Since the vessel did not make such an announcement to inform these workers as required by regulation, Gulf Tran, Inc., is negligent per se and has failed to meet its burden of showing that the violation of the statute could not have caused the incident.

6. In deciding what is reasonable care under <u>Kermarec v. Compagnie Generale Transatlantique</u>, supra, the Court should take into consideration the experience of the crew, the type of carrier involved, the dangers to the passengers peculiar to that type of carrier, the carrier's degree of control over the passengers, and the carrier's ability to take precautions against such dangers. <u>Smith v. Southern Gulf Marine Co. No. 2, Inc.</u>, 791 F.2d 416, 421 (5th Cir.1986). The crew on the M/V SUPPLIER was more experienced than the passengers in reference to the action of the vessel under the rough weather conditions. The Captain was in control of the vessel and could have ordered it to proceed at a speed much less than almost full throttle. The captain could have prevented the use of the upper portion of the settee as bunk in light of the sea conditions at the time of the incident. For these reasons Gulf Tran, Inc. through its captain breached its duty of reasonable care to the passengers.

7. The burden is on the shipowner to prove lack of knowledge or privity. <u>Patton-Tully Trans. Co. v. Ratliff</u>, 797 F.2d 206 (5th Cir.1986). Knowledge, when the shipowner is a corporation, is judged not only by what the corporation's managing officers actually knew, but also by what they

should have known with respect to conditions or actions likely to cause the loss. Verdin v. C & B Boat Co., 860 F.2d 150, 156 (5th Cir.1988). As stated earlier, Gulf Tran, Inc. had privity and knowledge through Ross Bruce, its president. He should have required an inspection of the settee/bunk before allowing their use as a temporary bunk while its vessel traveled in the Gulf of Mexico. He failed to instruct his captain as to requirements of the applicable Coast Guard regulations and did not order that the required announcements be given to the offshore workers.

8. A waiver of subrogation rights precludes the compensation carrier from enforcing its lien in a settlement between the insured's employee and the named company in whose favor the waiver was made. Allen v. Texaco, Inc., 510 F.2d 977 (5th Circuit 1975); Capps v. Humble Oil And Refining Company, 536 F.2d 80 (5th Circuit 1976). The endorsement in LWCC's policy precludes waiver herein since the waiver is a "Blanket Waiver".

9. Claimant was damaged as a result of a maritime tort and is entitled to a preferred maritime lien on the M/V SUPPLIER. The City of Panama, 101 U.S. 453 (1879); 46 U.S.C.A. § 31326.

Respectfully submitted,

_____
Danny J. Lirette (Bar Roll #8619)
Dexter A. Gary (Bar Roll #21292)
LIRETTE & GARY, L.L.C.
10 Professional Drive
Post Office Box 2968
Houma, Louisiana 70361-2968
Telephone: (985) 876-2997
COUNSEL FOR CLAIMANT,
   TODD BALLARD HINES

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 2nd day of December, 2002, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing the same by United States mail, properly addressed and first class postage prepaid.

_____
Danny J. Lirette - #8619