

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In the Matter of the Complaint of Bruce | * | CIVIL ACTION |
| Investment Co., Inc., as the Owner of | * | |
| M/V SUPPLIER, and Gulf Tran, Inc., | * | |
| as the Operator of M/V SUPPLIER, Praying | * | NUMBER 00-0372 |
| for Exoneration from or Limitation of Liability | * | |
| Pursuant to 46 U.S.C. Section 183 *et seq.* | * | SECTION S MAG. 2 |

---

## POST-TRIAL MEMORANDUM

---

This matter was tried to the Court on December 9,10 and 12, 2002. Judgment was rendered

in favor of Todd Hines, but limiting the liability of the vessel owner and operator to the value of the

vessel. The right of the intervenor, LWCC to recover was objected to by Claimant Todd Hines and

that issue was reserved until the Court rendered a decision on the main demand. This memorandum

is submitted in support of claimant Todd Hines' (now Rachel Hines') opposition to intervenor's right

to seek reimbursement of the compensation and medical it paid.

Facts

Todd Hines was an employee of Omega Services Industries at the time of his accident.

Omega was performing work for Allseas Services USA, Inc. under a written contract. (Exhibit A

attached hereto). Hines was injured on a vessel chartered by Allseas through Northbank Towing and

operated by Gulf Tran, Inc. (Exhibit B vessel log for December 20, 1998 attached hereto). This was

an oral charter. (Exhibit C   Deposition of Gulf Tran p7 line 3-19 attached hereto). There was no

written contract between Omega and Gulf Tran.

The LWCC policy providing compensation insurance included a waiver of subrogation

endorsement. (Exhibit D attached hereto). LWCC's policy provided for waiver of subrogation in

favor of persons or organizations named in the "Schedule". The "Schedule" does not name anyone

specifically but refers to "[a]ny person or organization to whom the named insured is obligated by

written contract to provide such waiver." The Omega contract with Allseas requires waiver of

subrogation in favor of COMPANY and COMPANY GROUP. Article 21.1 of Exhibit A. The

contract defines COMPANY as Allseas Subsea Contractors S.A. Exhibit A Section 1 Page 1. It also

defines COMPANY GROUP as the "COMPANY, its subsidiaries, parent, affiliated, and associated

companies including its and their (sub)contractors, agents...". Exhibit A Article 1.1. Therefore

under this contract, Omega was required to waive subrogation in favor of Allseas and its

(sub)contractors. Gulf Tran was a subcontractor of Allseas through its oral charter agreement with

Northbank Towing. A plain reading of the documents with the underlying facts clearly indicate that

LWCC has waived its right to seek subrogation in this case.

Gulf Tran and Allseas have not sought indemnification from Omega.

Law

The Fifth Circuit has recognized that a waiver of subrogation contained in a worker's

compensation policy can bar the carrier from enforcing its lien against the recovery by the

employee. Allen v. Texaco, 510 F.2d 977, (5th Cir. 1975) The Louisiana Oilfield Indemnity Act

(LOIA), La.Rev.Stat. § 9:2780 does not prohibit this waiver of subrogation because no one has

sought to enforce the indemnity provisions of the contract. <u>Fontenot v. Chevron U.S.A., Inc.</u>, 95-

1425 (La. 7/2/96), 676 So.2d 557.

The insurance policy provided waiver of subrogation where required by written contract. The

written contract between Omega and Allseas required waiver of subrogation in favor of Allseas and

its subcontractors. Gulf tran was such a subcontractor. LWCC should be prohibited from enforcing

its lien as a result of the applicable waiver of subrogation.

Respectfully submitted,

Danny J. Lirette (Bar Roll #8619)
Dexter A. Gary (Bar Roll #21292)
LIRETTE, GARY & SPENCE, L.L.C.
10 Professional Drive
Post Office Box 2968
Houma, Louisiana  70361-2968
Telephone: (985)  876-2997
COUNSEL FOR CLAIMANT,
    RACHEL HINES

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 28th  day of August,  2003, served a copy of the
foregoing pleading on counsel for all parties to this proceeding, by mailing the same by United States
mail, properly addressed and first class postage prepaid.

Danny J. Lirette   -   #8619

# OMEGA
## SERVICE INDUSTRIES, INC.
A Subsidiary of Natchiq, Inc.

**New Iberia Division:**
101 Irish Bend Road
P O Box 10340
New Iberia. LA  70562-0340
Phone: (318) 365-6028
Fax:  (318) 365-6029
Wats:  (800) 368-6028

**Fabrication Facilities:**
New Iberia. LA
Belle Chasse. LA

12-Sep-98

Allseas Services USA, Inc.
333 N. Sam Houston Pkwy E.  Suite 750
Houston, TX  77060

Attn.:      Mr. Adam Albarado

Reference: Ship Shoal 354

Please find enclosed the information you requested. The executed contract is also included.

If you need any need any further assistance, please do not hesitate to contact the undersigned.

Omega Service Industries, Inc.

Michael Burke
Sr. Vice President Construction


EXHIBIT
A

## SECTION 1 - FORM OF AGREEMENT

## SECTION 1    FORM OF AGREEMENT

| | |
|---|---|
| **Omega Service Industries, Inc.**<br>**101 Irish Bend Road**<br>**New Iberia, La.  USA    70560** | Allseas Subsea Contractors S.A.<br>Route de la Coula 5<br>1618 Châtel-St. Denis<br>Switzerland |
| hereinafter referred to as CONTRACTOR | hereinafter referred to as COMPANY |

WHEREAS:

1. COMPANY is desirous of engaging CONTRACTOR to perform on- and offshore construction services , the WORK, to be provided by CONTRACTOR to COMPANY;

2. COMPANY is desirous of engaging CONTRACTOR to perform the WORK as described in the AGREEMENT and CONTRACTOR is knowledgeable and experienced in the type of WORK and is willing to undertake the WORK on the terms and conditions as hereinafter stated in consideration of the PRICE.

The PARTIES hereby agree as follows:-

1. In the Form of Agreement all capitalized words shall have the meaning defined within Section 2 - Standard Conditions.

2. The AGREEMENT shall mean and consist of the sections stated below, and in the event of ambiguity or contradiction, the following order of precedence shall apply:

| | |
|---|---|
| Section 1 | Form of Agreement |
| Section 3 | Special Conditions |
| Section 2 | Standard Conditions |
| Section 4 | Scope of Work |
| Section 5 | Schedule of Prices |
| Section 6 | Programme |
| Section 7 | Administration Requirements |
| Section 8 | Quality Assurance, Safety and Environmental Requirements |

3. CONTRACTOR shall perform and complete the WORK and COMPANY shall pay to the CONTRACTOR the PRICE.

4. CONTRACTOR shall perform the WORK in accordance with the dates set out in Section 6 - Programme and shall achieve completion by the COMPLETION DATES.

5. CONTRACTOR agrees to look only to COMPANY for the performance of the obligation assumed herein by COMPANY and nothing herein shall entitle CONTRACTOR to commence proceedings against any other entity.

6. This AGREEMENT constitutes the entire AGREEMENT between the PARTIES and supersedes all prior representations, negotiations and agreements related to the AGREEMENT and is entered into in duplicate original and shall become effective on the date of signature of the second PARTY.

Duly authorized signature for and on behalf of CONTRACTOR
Signed

| | | |
|---|---|---|
| Name | : | **Michael Burke** |
| Position | : | **Sr.Vice President Construction** |
| Company | : | **Omega Service Industries, Inc.** |

Date            :        **9/12/98**

Duly authorized signature for and on behalf of COMPANY
Signed


Name            :
Position        :
Company         :
Date            :

# INDEX

|  |  |  | Page |
|---|---|---|---|
| Article 1 | Definitions | 2 |  |
| Article 2 | Interpretation | 2 |  |
| Article 3 | Representative | 3 |  |
| Article 4 | Contractors Representations and Warranties | 3 |  |
| Article 5 | Company Supplied Materials | 4 |  |
| Article 6 | Company Supplied Information | 4 |  |
| Article 7 | Assignment and Subcontracts | 4 |  |
| Article 8 | Contractor Personnel | 5 |  |
| Article 9 | Co-operation with Others | 5 |  |
| Article 10 | Work Schedule and Programme |  | 5 |
| Article 11 | Inspection and Testing |  | 6 |
| Article 12 | Variations |  | 6 |
| Article 13 | Force Majeure |  | 7 |
| Article 14 | Suspension |  | 8 |
| Article 15 | Price and Payment |  | 8 |
| Article 16 | Taxation |  | 9 |
| Article 17 | Ownership |  | 9 |
| Article 18 | Patents and Protected Rights |  | 9 |
| Article 19 | Permits, Laws and Regulations |  | 10 |
| Article 20 | Indemnities |  | 10 |
| Article 21 | Insurance |  | 11 |
| Article 22 | Consequential Losses |  | 12 |
| Article 23 | Confidentiality |  | 12 |
| Article 24 | Completion of Work |  | 13 |
| Article 25 | Warranty |  | 13 |
| Article 26 | Termination for Company Convenience |  | 13 |
| Article 27 | Termination for Default |  | 13 |
| Article 28 | Audit Rights of Company |  | 14 |
| Article 29 | Liens |  | 14 |
| Article 30 | Quality Assurance, Safety and Environmental Requirements |  | 15 |
| Article 31 | Independent Contractor |  | 15 |
| Article 32 | Notices |  | 15 |
| Article 33 | Bank Guarantee and Retention |  | 15 |
| Article 34 | Parent Company Guarantee |  | 15 |
| Article 35 | Amendments and Variations to the Agreement |  | 16 |
| Article 36 | Survival of Terms |  | 16 |
| Article 37 | Governing Law and Disputes |  | 16 |

## Article 1 - Definitions

For the purposes of the AGREEMENT the following terms shall have the meanings indicated below:

1.1     COMPANY GROUP shall mean COMPANY, its subsidiaries, parent, affiliated and associated companies including its and their (sub)contractors, agents, servants, directors, officers and employees.

1.2     COMPANY's CLIENT shall be defined in Section 4 - Scope of Work.

1.3     COMPLETION DATE shall mean the date stated in Section 6 - Programme, as may be amended in accordance with the AGREEMENT.

1.4     PARTY shall mean COMPANY or CONTRACTOR. PARTIES shall mean both COMPANY and CONTRACTOR.

1.5     PRICE shall mean the sum or sums stated in Section 5 - Schedule of Prices, as may be amended in accordance with the AGREEMENT.

1.6     PROGRAMME shall mean the date or sequence of dates for the performance of the AGREEMENT as stated in Section 6 - Programme, as may be amended in accordance with the AGREEMENT.

1.7     PROPRIETARY INFORMATION shall mean any information passed to the CONTRACTOR by the COMPANY or any information generated by the CONTRACTOR or its SUBCONTRACTORS in connection with the AGREEMENT.

1.8     REPRESENTATIVE shall mean the person appointed in accordance with Article 3 of this Section 2.

1.9     SUBCONTRACTOR shall mean any party engaged by CONTRACTOR in connection with the WORK.

1.10    THIRD PARTY shall mean any entity other than CONTRACTOR and COMPANY.

1.11    VARIATION ORDER shall mean any alteration approved by COMPANY in accordance with Article 12. VARIATION REQUEST, DISPUTED VARIATION and INSTRUCTION shall be defined in Article 12.

1.12    WORK shall mean all the work, supplies and services to be performed by CONTRACTOR in accordance with the AGREEMENT, as may be amended in accordance with the AGREEMENT.

1.13    WORKSITE shall mean the locations of and the facilities used for the performance of the WORK, or any part thereof, including but not limited to the fabrication yards, testing facilities, offices, warehouses, storage and handling areas.

## Article 2 - Interpretation

2.1     No heading, index, title, subtitle, subheading, marginal note, singular or plural of the AGREEMENT shall limit, alter or affect the meaning or operation of the AGREEMENT.

2.2     All correspondence and documentation shall be in the English language. Only written communication (such communication maybe by facsimile) addressed to the REPRESENTATIVE, unless the AGREEMENT specifies an alternative addressee, shall be recognised under the AGREEMENT.

2.3     Any review, inspection, approval, expression of satisfaction, acceptance, payment, attendance at tests, acknowledgement or the suchlike, by COMPANY, whether written or otherwise, or the performance by COMPANY of its own tests and examinations, shall not relieve CONTRACTOR

from any liability or obligation under the AGREEMENT and shall be without prejudice to the rights and remedies of COMPANY.

2.4    No failure or relaxation on the part of COMPANY to require or enforce the strict adherence to the AGREEMENT shall constitute a waiver of such requirements and provisions or shall prejudice the rights and remedies of COMPANY.

## Article 3 - REPRESENTATIVE

3.1    Each PARTY shall appoint in writing each to the other PARTY, in Section 3 - Special Conditions, a REPRESENTATIVE who shall be available to accept communication and to commit and act on behalf of the respective PARTY in all matters arising in connection with the AGREEMENT.

3.2    The REPRESENTATIVE of either PARTY may delegate any of its responsibilities to any nominated deputy.  Such delegation, and any terms attached thereto, shall be subject to prior written notification to the other PARTY. Communication from the nominated deputy shall be as if from the REPRESENTATIVE.

3.3    CONTRACTOR REPRESENTATIVE or the nominated deputy shall be readily available while the WORK is being performed.

3.4    CONTRACTOR shall use its best endeavours to maintain the same person in the position of CONTRACTOR REPRESENTATIVE and shall not of itself cause the person to be changed or replaced during the performance of the WORK.

## Article 4 - CONTRACTORS Representations and Warranties

CONTRACTOR represents, warrants and undertakes that:

a)    it has, and shall maintain for the duration of the WORK the necessary skills, knowledge, experience and resources to perform the WORK;

b)    it has, and shall maintain for the duration of the WORK the necessary suitably qualified and in every respect competent personnel in sufficient numbers to perform the WORK in accordance with the AGREEMENT. CONTRACTOR shall effect an efficient business administration and supervision and engage an adequate supply of materials, parts, tools, equipment, personnel, facilities, supplies and all other services and things necessary to perform the WORK;

c)    it is familiar with, and has knowledge of, and shall perform the WORK in accordance with the requirements of the AGREEMENT, any and all, engineering standards, recommendations, laws, regulations, certifying requirements, codes of practise and good safety practices relating to the WORK;

d)    it has properly and adequately informed itself of the intended application of the WORK and the intended operations of the WORK and the WORK environment;

e)    it shall, where no detailed specification is included in the AGREEMENT, provide materials and equipment or parts thereof that are new, fit for their intended purpose and of good mercantile quality and workmanship;

f)    it shall, from the date of AGREEMENT to completion of the AGREEMENT, continuously and diligently perform or cause the performance of the WORK.

## Article 5 - COMPANY Supplied Materials

5.1    Where COMPANY is to supply materials, such requirement and the items to be supplied shall be stated under Section 4 - Scope of Work. COMPANY shall provide, at its own costs, the aforementioned materials at the location and in the manner specified in Section 4. Thereafter CONTRACTOR shall assume sole responsibility and risk for the materials supplied by COMPANY.

5.2 CONTRACTOR shall be responsible for receiving, unloading, handling, safe storage and visual inspection of COMPANY supplied materials and the performance of any additional tests or inspection specified in Section 4 - Scope of Work. CONTRACTOR shall promptly notify COMPANY of any discrepancy, loss or damage.

5.3 The rate of unloading shall be at such a rate to achieve the time requirements stated in Section 6 - Programme. In the event CONTRACTOR fails to satisfy the required unloading rate, CONTRACTOR shall reimburse COMPANY for demurrage incurred by COMPANY or COMPANY's CLIENT. Where no specific unloading rate is stated the unloading shall be performed in a timely manner.

## Article 6 - COMPANY Supplied Information

6.1 CONTRACTOR represents that it has examined the information supplied by COMPANY under the AGREEMENT for errors and omissions.

6.2 CONTRACTOR warrants that it is fully satisfied with the completeness of the information supplied by COMPANY, effective on the date of the AGREEMENT, and that such information is in all respects fit and sufficient for its intended purpose and to perform and complete the WORK in full compliance with the AGREEMENT.

6.3 COMPANY may issue additional information or revisions to existing information at any time or from time to time and CONTRACTOR shall on receipt examine such information for errors and omissions and shall incorporate the correct information into the WORK in a timely manner. In the event of the discovery of an error in COMPANY supplied information, CONTRACTOR shall promptly notify COMPANY shall advise CONTRACTOR of the measures to be taken.

## Article 7 - Assignment and Subcontracts

7.1 CONTRACTOR shall not assign the AGREEMENT, nor use the AGREEMENT as any form of collateral, loan basis, creditor undertaking, payment security, or factoring, unless approved by COMPANY in writing.   COMPANY may, at its absolute discretion, assign the AGREEMENT including assignment to COMPANY's CLIENT, however COMPANY shall remain responsible for the financial obligations assumed by the assignee under the AGREEMENT.

7.2 CONTRACTOR shall not subcontract the WORK, unless approved by COMPANY in writing. Where a subcontract is intended, CONTRACTOR shall provide COMPANY an adequate opportunity to review the subcontract and the selection of SUBCONTRACTOR.

7.3 No subcontract shall suggest the existence of any form of contractual relationship between COMPANY and the SUBCONTRACTOR. No subcontract shall relieve or diminish the obligations and/or liabilities of CONTRACTOR under the AGREEMENT and CONTRACTOR shall be held liable for the acts, omissions and defaults of its SUBCONTRACTOR and their respective officers, directors, employees, servants and agents.

## Article 8 - CONTRACTOR Personnel

COMPANY may request CONTRACTOR at any time to remove any officer, employee or agent of CONTRACTOR or SUBCONTRACTOR from the WORKSITE without COMPANY offering any reason. CONTRACTOR shall effect the removal immediately and shall replace the person and within twenty-four (24) hours, or such longer time as COMPANY may approve. All costs incurred in the removal of any person and their replacement shall be for the account of CONTRACTOR.

## Article 9 - Co-operation With Others

During the carrying out of the WORK COMPANY may employ other contractors in connection with its operations at the WORKSITE. CONTRACTOR shall permit free access to the WORKSITE to such other contractors and shall co-operate with them and afford all reasonable facilities to them.

**Article 10 - Work Schedule and PROGRAMME**

10.1  CONTRACTOR shall be responsible for achieving the performance of the WORK in accordance with the PROGRAMME. CONTRACTOR shall monitor and report planned and actual progress of the WORK at the frequency and in the detail stated in Section 7 - Administration Requirements including the effects of any VARIATION ORDER.

10.2  If at any time during the performance of the WORK, CONTRACTOR should for any reason have cause to believe that the WORK, or any part thereof, cannot be completed within the time and/or the milestones specified in the PROGRAMME, CONTRACTOR shall promptly notify COMPANY.

10.3  If CONTRACTOR's actual progress of the WORK does not conform to the PROGRAMME, COMPANY shall have the right, without prejudice to its contractual or other rights and remedies, to require CONTRACTOR to initiate such actions as are necessary, in the opinion of COMPANY, to correct the situation at the cost of CONTRACTOR. Such actions may include additional manpower, additional shifts, accelerated recovery processes or such other measures as deemed appropriate by COMPANY.

10.4  In the event the WORK is not completed by the COMPLETION DATE, set forth in the PROGRAMME, CONTRACTOR shall pay for each full week of delay, as liquidated damages, to COMPANY an amount of 2% of the PRICE up to a maximum of 10% of the PRICE.

10.5  All amounts of such liquidated damages for which CONTRACTOR may become liable are agreed as a genuine pre-estimate of the losses which may be sustained by COMPANY in the event that CONTRACTOR fails in his respective obligations under the AGREEMENT and not a penalty. Such liquidated damages shall be the sole and exclusive financial remedy of COMPANY in respect of such failure.

**Article 11 - Inspection and Testing**

11.1  COMPANY REPRESENTATIVE and/or persons authorized by COMPANY REPRESENTATIVE shall have the right of access to the WORKSITE and may perform inspection and testing activities and/or witness CONTRACTOR's performance of inspection and testing activities.

11.2  Not less than five (5) days notice shall be given by CONTRACTOR of its, or its SUBCONTRACTOR's intention to perform a test in order that COMPANY may attend the performance of the test.

11.3  CONTRACTOR shall not make inaccessible any part of the WORK prior to allowing COMPANY the opportunity to inspect and test and shall allow reasonable time for COMPANY's testing and inspection activities within its PROGRAMME.

11.4  CONTRACTOR shall make available to COMPANY, without charge, any tools or equipment that may be available to perform testing and inspection activities.

11.5  Neither failure of COMPANY or others to inspect the WORK or witness or test or to discover defects nor failure to reject work by CONTRACTOR which is not in accordance with the AGREEMENT shall relieve CONTRACTOR from any liability or obligation under the AGREEMENT.

**Article 12 - Variations**

12.1  COMPANY has the right at any time and from time to time to order variations to the WORK. Variations may include an increase or decrease or change in the quantity, character, quality, kind or performance of the WORK, change of specification, and/or the sequence or time for performance of the WORK. COMPANY shall issue a VARIATION REQUEST to administer the variation. The procedure for creating a VARIATION ORDER is contained in Section 7 - Administration Requirements.



12.2   If CONTRACTOR considers that an occurrence has taken place that should give rise to a VARIATION ORDER, CONTRACTOR shall, without undue delay, but in any event within seven (7) days, and prior to proceeding with the WORK submit a VARIATION REQUEST to COMPANY in the format shown in Section 7 - Administration Requirements. The procedure for creating a VARIATION ORDER is contained in Section 7 - Administration Requirements.

12.3   A variation caused by circumstances for which CONTRACTOR is responsible shall not entitle CONTRACTOR to a VARIATION ORDER.

12.4   The procedure for issuance and resolution of a DISPUTED VARIATION by COMPANY is contained in Section 7 - Administration Requirements.

12.5   CONTRACTOR shall perform VARIATION ORDERS and DISPUTED VARIATIONS without undue delay.

12.6   The PRICE and/or the PROGRAMME shall only be subject to adjustment as a result of a VARIATION ORDER duly signed by both PARTIES. CONTRACTOR shall not be entitled to any adjustment to the PRICE or PROGRAMME in respect of any work performed prior to such VARIATION ORDER.

A variation shall not affect the rights or obligations of the PARTIES except as expressly stated in the VARIATION ORDER. VARIATION ORDERS shall be governed by all the provisions of the AGREEMENT.

12.7   Notwithstanding anything else in Article 12, COMPANY may issue at any time an INSTRUCTION in the format shown in Section 7 - Administration Requirements and CONTRACTOR shall execute the work described in the INSTRUCTION forthwith and without the issuance of a VARIATION REQUEST or VARIATION ORDER.

After the work described in the INSTRUCTION has commenced, CONTRACTOR may submit a proposal for a VARIATION ORDER, fully in accordance with Article 12.1 (except that CONTRACTOR shall proceed with the work described in the INSTRUCTION).

## Article 13 - Force Majeure

13.1   Neither PARTY to the AGREEMENT shall be liable for any failure to perform its obligations to the extent that such failure is due to a force majeure occurrence.

13.2   For the purposes of the AGREEMENT, a force majeure occurrence shall mean any circumstance or event of a kind and nature which is beyond the control and without the fault or negligence of the PARTY affected and which makes the performance of the AGREEMENT impossible and being circumstances or events which could not have been prevented or avoided by the exercise of due diligence or other prudent precautions.

13.3   The following, howsoever caused, shall not be considered as an occurrence of force majeure under the AGREEMENT:

a)   strikes (except nationally declared strikes), lock-outs, labour disputes or labour skills shortages;

b)   material, power, energy and fuel shortages;

c)   breakdown of any tools, machinery, equipment or facilities;

d)   delays or prevention in the performance of the AGREEMENT caused by CONTRACTOR's commitments to others, including force majeure events not occurring within the AGREEMENT.

13.4   The PARTY claiming force majeure shall notify the other PARTY promptly and in any event within forty-eight (48) hours by serving a written notice and shall provide full particulars thereof, including

its intended actions to resolve the event. The PARTY affected shall be under the obligation to use its best endeavours to mitigate the effects of the force majeure event, at its own cost.

13.5 The occurrence of a force majeure event, including its effects and resolution shall not be cause for an adjustment to the PRICE.

## Article 14 - Suspension

14.1 COMPANY may at any time suspend, at its absolute discretion, the performance of all or part of the WORK by giving written notice to CONTRACTOR.

14.2 On receipt of the notice of suspension CONTRACTOR shall secure and preserve the WORK.

14.3 COMPANY shall compensate CONTRACTOR for such documented cost that are directly attributable to the suspension. No compensation shall be due to CONTRACTOR for suspension that is necessary for safety of the WORK or in the event of default by CONTRACTOR.

14.4 COMPANY shall keep CONTRACTOR informed of the date of the likely resumption of the WORK.

14.5 COMPANY may request a resumption of the WORK at any time following the notice of suspension and CONTRACTOR shall promptly resume the WORK.

## Article 15 - PRICE and Payment

15.1 CONTRACTOR warrants that it has made adequate provision in the PRICE in relation to properly perform the WORK.

15.2 CONTRACTOR shall submit invoices with supporting documentation to the address stated in Section 1- Form of Agreement in accordance with Section 5 - Schedule of Prices. Each invoice shall indicate the AGREEMENT no. and title.

15.3 Within forty-five (45) days from receipt of a correctly prepared invoice, COMPANY shall effect payment to CONTRACTOR. If COMPANY disputes any item on an invoice in whole, or in part, or if the invoice is incorrectly prepared, COMPANY shall either return the invoice to CONTRACTOR advising CONTRACTOR of the reasons or request CONTRACTOR to issue a credit note for the disputed amount.

15.4 Where a payment is being claimed by CONTRACTOR under a lump sum item, CONTRACTOR shall provide with the invoice supporting documentation that the item has been satisfactorily completed. Lump sum items shall only be due for invoicing on full completion of all of the work required under the subject lump sum item.

15.5 Where a payment is being claimed on a day rate or unit basis, CONTRACTOR shall support the invoice with the appropriate documentation signed by COMPANY REPRESENTATIVE.

15.6 Any amounts otherwise payable may be withheld at the amount estimated by COMPANY by reason of:

    a)    defective WORK not remedied;

    b)    lack of progress in the WORK performance;

    c)    any actual, alleged or anticipated claims, liabilities, costs, damages and expenses of every kind and nature properly maintainable by COMPANY against CONTRACTOR;

    d)    default or breach by CONTRACTOR of any of the provisions or obligations of the AGREEMENT.

## Article 16 - Taxation

16.1 Except as otherwise specifically provided for in Section 5 - Schedule of Prices, CONTRACTOR shall be fully and exclusively liable for payment of all taxes, duties, levies, charges and contributions (including any interest or penalties thereon) including, but not limited to, unemployment insurance, national insurances, social security benefits, corporate taxation as imposed by any governmental authorities arising in connection with the AGREEMENT.

16.2 CONTRACTOR agrees to defend, indemnify and hold harmless COMPANY GROUP from all claims, suits, costs, expenses, liabilities, fines, judgements and demands as may be incurred resulting from or connected with, any tax assessment, allegation or imposition on CONTRACTOR or any of its SUBCONTRACTORS, officers, directors, employees, servants and agents.

16.3 COMPANY may, without liability to CONTRACTOR, withhold wage withholding tax, social security premiums and other taxes from payments made under the AGREEMENT by COMPANY to CONTRACTOR, and pay those amounts directly to the governmental authorities on behalf of and in settlement of taxes which are assessed, alleged or imposed on CONTRACTOR or any of its SUBCONTRACTORS, officers, directors, employees, servants and agents. Any payments made by COMPANY in accordance with this Article 16.3 will be accepted by CONTRACTOR as compensation under the AGREEMENT.

## Article 17 - Ownership

17.1 Title of ownership to, access to, and rights of possession of the WORK and anything related thereto, arising out of or in connection with the AGREEMENT shall vest in COMPANY immediately upon the earlier of creation of the item or on delivery at the WORKSITE.

17.2 All items owned by COMPANY and in the possession of CONTRACTOR shall be suitably marked or clearly identified as the property of COMPANY. As far as possible all such items shall be segregated from other property.

## Article 18 - Patents and Protected Rights

18.1 Title to, access to, copyright in, the right to possession of and the free right of use of all items or ideas created under or arising out of or in connection with the WORK shall vest in COMPANY immediately upon the date of creation of the item or idea.

18.2 COMPANY shall have the sole right to seek patents or other proprietary or protected rights on any item or idea arising out of or in connection with the WORK. COMPANY may, at its sole discretion, give CONTRACTOR a written release of any item or idea. In this event, CONTRACTOR agrees to grant COMPANY a royalty fee irrevocable licence to manufacture, use or otherwise benefit from the subject patent or other proprietary or protected right.

18.3 CONTRACTOR shall indemnify and hold harmless COMPANY GROUP from all claims, liabilities, costs, damages and expenses of every kind and nature associated with, related to, or arising out of, any alleged infringement of any patent or proprietary or protected right used in the performance of the AGREEMENT.

## Article 19 - Permits, Laws and Regulations

19.1 CONTRACTOR shall obtain, at its own costs, all licences, permits and authorisations necessary for the performance of the AGREEMENT and/or the WORK and for the operation of the equipment of CONTRACTOR.

19.2 CONTRACTOR shall comply with all laws, rules and regulations applicable to AGREEMENT and/or the WORK and shall be responsible for ensuring compliance by its SUBCONTRACTORS.

19.3 CONTRACTOR shall defend, indemnify and hold COMPANY GROUP harmless from any claims, liabilities, costs, damages and expenses of every kind and nature resulting from non-compliance with such laws, rules or regulations by CONTRACTOR or its SUBCONTRACTORS.

**Article 20 - Indemnities**

20.1  CONTRACTOR shall indemnify and hold harmless COMPANY GROUP, COMPANY's CLIENT, their officers, directors, employees, servants and agents in respect of loss of or damage to the WORK (until the issuance of the Certificate of Completion), the property or equipment of CONTRACTOR, its SUBCONTRACTORS, their officers, directors, employees, servants or agents and the property or equipment of THIRD PARTIES, arising from or relating to the performance of the AGREEMENT, notwithstanding the negligence or breach of duty (statutory or otherwise) of COMPANY GROUP, COMPANY's CLIENT, their officers, directors, employees, servants or agents causing or contributing to such loss or damage.

Loss or damage to the WORK, the property or equipment shall be deemed to include pollution emanating therefrom or occurring at the premises of CONTRACTOR, its SUBCONTRACTORS, their officers, directors, employees, servants or agents and THIRD PARTIES, arising from or relating to the performance of the AGREEMENT.

20.2  COMPANY shall indemnify and hold harmless CONTRACTOR, its officers, directors, employees, servants and agents in respect of loss of or damage to the property or equipment of COMPANY GROUP, arising from or relating to the performance of the AGREEMENT, notwithstanding the negligence or breach of duty (statutory or otherwise) of CONTRACTOR, its officers, directors, employees, servants or agents causing or contributing to such loss or damage.

Loss or damage to property shall be deemed to include pollution emanating therefrom or occurring at the premises of COMPANY GROUP.

20.3  CONTRACTOR shall indemnify and hold harmless COMPANY GROUP, COMPANY's CLIENT, their officers, directors, employees, servants and agents from claims, liabilities, costs, damages and expenses of every kind and nature resulting from personal injury including fatal injury and disease, to CONTRACTOR, its SUBCONTRACTORS, their officers, directors, employees, servants or agents and THIRD PARTIES, arising from or relating to the performance of the AGREEMENT, notwithstanding the negligence or breach of duty (statutory or otherwise) of COMPANY GROUP, COMPANY's CLIENT, their officers, directors, employees, servants or agents causing or contributing to such loss or damage.

20.4  COMPANY shall indemnify and hold harmless CONTRACTOR, its officers, directors, employees, servants and agents from claims, liabilities, costs, damages and expenses of every kind and nature resulting from personal injury including fatal injury and disease, to COMPANY GROUP, arising from or relating to the performance of the AGREEMENT, notwithstanding the negligence or breach of duty (statutory or otherwise) of CONTRACTOR, its officers, directors, employees, servants or agents causing or contributing to such loss or damage.

20.5  For the purpose of Article 20, COMPANY shall endeavour to give for the benefit of CONTRACTOR, any indemnity or limit received by COMPANY from COMPANY's CLIENT to the extent it is enforceable under the contract between COMPANY and COMPANY's CLIENT. Such indemnities or limits shall be explicitly agreed upon in the Section 3 - Special Conditions.
It is expressly understood between the PARTIES that failing such agreement in Section 3 - Special Conditions no indemnities or limits shall be deemed to have been given for the benefit of CONTRACTOR.

**Article 21 - Insurance**

21.1  Without limitation of its obligations and responsibilities CONTRACTOR shall maintain for the duration of the AGREEMENT the following insurances with insurers satisfactory to COMPANY and with COMPANY GROUP and COMPANY'S CLIENT named as additional insureds to the extent CONTRACTOR has assumed liabilities under this AGREEMENT and a waiver of the expressed and implied rights of subrogation:

a) Employers Liability and/or (where the jurisdiction of where the WORK is to be performed or under which the employees employed requires the same) Workmen's Compensation Insurance covering personal injury to or death of the employees of CONTRACTOR engaged in the performance of the WORK to the minimum value as required by any applicable legislation including extended cover for working offshore, if applicable.

b) General Third Party Liability Insurance for any incident or series of incidents covering the operations of CONTRACTOR in the performance of the WORK, in an amount not less than USD 1'000'000 for performance of the WORK onshore, if applicable; and USD 15'000'000 for performance of the WORK offshore, if applicable.

c) Third Party and Passenger Liability Insurance and other motor insurance as required by applicable jurisdiction.

d) Marine Hull and Machinery Insurance including war risk coverage and, to the extent not provided in (e) below, collision liability in respect of all vessels used, if applicable, by CONTRACTOR performance of the WORK in an amount not less than the full value of the vessels.

e) Protection and Indemnity Insurance including wreck and debris removal and oil pollution liability in respect of all vessels, craft or floating equipment owned, leased or hired, if applicable, by CONTRACTOR in the performance of the WORK in amounts not less than USD 15'000'000 or the full value of the vessels, whichever is the greater.

21.2 CONTRACTOR at the request of COMPANY shall furnish to COMPANY certificates of the insurance required by this Article 21 giving evidence of types and scope of each insurance cover and a statement from the insurers that no insurance shall be cancelled or materially changed during the term of the AGREEMENT without thirty (30) days prior written notice.

21.3 If COMPANY's CLIENT provides a Builder's Risk Insurance covering loss or damage to the WORK, CONTRACTOR shall be named on the insurance as an additional insured. In the event of a claim under such insurance CONTRACTOR shall bear the deductible applying for each incident and shall give immediate notice to COMPANY of the occurrence of the incident. CONTRACTOR shall be responsible for the preparation of the claim.

## Article 22 - Consequential Losses

COMPANY and CONTRACTOR shall in no event be held liable, each to the other, for indirect losses, including but not limited to loss of production, loss of product, loss of use and loss of revenue, loss of profit or anticipated profit, howsoever arising out of or in connection with the AGREEMENT, including where caused by the negligence of either PARTY.

## Article 23 - Confidentiality

23.1 CONTRACTOR shall not, without the prior written approval of COMPANY, disclose to any THIRD PARTY any PROPRIETARY INFORMATION or any information concerning COMPANY's technical and business interests and know-how, nor shall make any promotional display, announcement or advertisement relating to the AGREEMENT, without the prior written approval of COMPANY.

These provisions shall not apply to information within the following categories:

a) information which, prior to the time of disclosure, was lawfully in the public domain;

b) information which through no fault of CONTRACTOR enters into the public domain;

c) information obtained by CONTRACTOR from a THIRD PARTY who was lawfully in possession of such information;

d)    information which CONTRACTOR is obliged to disclose by applicable law, rules or regulations.

23.2   CONTRACTOR undertakes to monitor the distribution of PROPRIETARY INFORMATION within its organisation.

23.3   CONTRACTOR warrants that it shall cause its officers, directors, employees, servants, agents and SUBCONTRACTORS to comply with the provisions of Article 23.


## Article 24 - Completion of the WORK

24.1   When CONTRACTOR considers that the WORK has been completed, CONTRACTOR shall notify COMPANY.

24.2   COMPANY shall without undue delay, but in any event within thirty (30) days, either issue a Certificate of Completion in the format shown in Section 7 - Administration Requirements or shall notify CONTRACTOR of the items not performed in accordance with the AGREEMENT. CONTRACTOR shall promptly remedy such items.

24.3   COMPANY shall not be obliged to issue a Certificate of Completion before the COMPLETION DATE.

24.4   The issuance of the Certificate of Completion shall not prejudice any rights or remedies of COMPANY under the AGREEMENT or at law.


## Article 25 - Warranty

25.1   CONTRACTOR warrants and guarantees that the WORK is in accordance with the AGREEMENT and is free from errors, defects and bad workmanship. During the warranty period of eighteen (18) months commencing on the date of the issuance of the Certificate of Completion, CONTRACTOR shall, with all due diligence and without cost to COMPANY, replace or repair the WORK or any part thereof found to be defective.

25.2   If CONTRACTOR does not remedy the defective WORK or does not do so in a diligent and timely manner, after having been notified by COMPANY to do so, COMPANY shall have the right to perform or to have the remedial activities performed by others at CONTRACTOR's cost, limited in aggregate to the PRICE.


## Article 26 - Termination for COMPANY Convenience

26.1   COMPANY shall have the right at any time and at its absolute discretion to terminate the AGREEMENT by serving CONTRACTOR a notice of termination.

26.2   In the event of such notice of termination, CONTRACTOR shall allow COMPANY full rights of access to recover the WORK and any drawings, specifications and documents and COMPANY shall compensate CONTRACTOR for:

a)    the WORK performed up to the date of termination in accordance with Section 5 - Schedule of Prices;

b)    the documented costs incurred which arise as a direct result of the termination.


## Article 27 - Termination for Default

27.1   COMPANY shall have the right, without prejudice to any of its other rights or remedies arising in connection with the AGREEMENT or at law, by giving written notice to terminate the AGREEMENT for any of the following reasons:

a) CONTRACTOR shall become insolvent, in receivership, bankruptcy, in administration, in composition or arrangement with its creditors, voluntary winding-up or any equivalent act or thing under any applicable law; or

b) CONTRACTOR shall be in default of any provision of the AGREEMENT; or

c) CONTRACTOR shall fail, neglect, refuse or be unable at any time during the course of the WORK to provide sufficient material, equipment, services or labour to perform the WORK at the quality specified or at a progress rate deemed sufficient by COMPANY; or

d) CONTRACTOR abandons the WORK.

27.2 In the event of termination under Article 27.1 above, COMPANY and CONTRACTOR shall have, without prejudice to any of its other rights or remedies arising in connection with the AGREEMENT or at law, the following rights, obligations and duties:

a) COMPANY shall have the right to complete the WORK itself or with the assistance of THIRD parties. CONTRACTOR shall provide every assistance to COMPANY to effect the same including, on request of COMPANY, to assign subcontracts and make available tools, instruments, equipment and facilities;

b) CONTRACTOR shall be liable for the excess costs incurred by COMPANY in the completion of the WORK.

## Article 28 - Audit Rights of COMPANY

28.1 CONTRACTOR shall allow COMPANY access for audit purposes during a period of three (3) years after the issuance of the Certificate of Completion.

28.2 No charges shall be made by CONTRACTOR for audit access.

28.3 CONTRACTOR shall maintain records relating to the AGREEMENT for a minimum period of three (3) years after the issuance of the Certificate of Completion.

28.4 CONTRACTOR shall obtain equivalent rights of audit to those specified above from all SUBCONTRACTORS and will cause such rights to extend to COMPANY.

## Article 29 - Liens

29.1 CONTRACTOR shall not claim any lien, charge or the like on the WORK or on any property of COMPANY in the possession of CONTRACTOR or at the WORKSITE.

29.2 Without prejudice to any other provisions of Article 29, CONTRACTOR shall save, indemnify, defend and hold harmless COMPANY from and against all liens, attachments, charges of claims by any SUBCONTRACTORS or persons alleging to be subcontractors in connection with or arising out of the AGREEMENT.

29.3 CONTRACTOR shall immediately notify COMPANY of any possible lien, attachment, charge or claim which may affect the WORK or any part thereof.

29.4 If at any time there is evidence of any lien, attachment, charge or claim to which, if established, COMPANY or its property might be subjected, whether made by any persons against CONTRACTOR or made by any THIRD PARTY, SUBCONTRACTOR or person alleging to be a subcontractor against COMPANY, then COMPANY shall have the right to withhold and/or set off or otherwise recover from CONTRACTOR such sum of money as will fully indemnify COMPANY against any such lien, attachment, charge or claim.

## Article 30 - Quality Assurance, Safety and Environmental Requirements

CONTRACTOR shall operate a quality assurance system and a health, safety and environmental policy in accordance with the requirements of Section 8 - Quality Assurance, Safety and Environmental Requirements.

## Article 31 - Independent Contractor

31.1 CONTRACTOR shall act as an independent contractor in the performance of and for its other obligations arising out of or under the AGREEMENT.

31.2 CONTRACTOR shall be fully responsible for, and shall have exclusive direction and control of its officers, directors, employees, servants, agents, SUBCONTRACTORS and any other entities engaged by CONTRACTOR in connection with the AGREEMENT. In no event shall the relationship between the PARTIES be construed as that of principal and agent or master and servant or for personnel of CONTRACTOR or any SUBCONTRACTORS to be, or purport to be, employees, representatives, agents or servants of COMPANY.

## Article 32 - Notices

Contractual notices shall be addressed to the addresses stated in Section 1 - Form of Agreement and shall be sent by registered mail or facsimile and shall be deemed served:

a)  if by facsimile, on receipt, if during normal business hours of the receiving PARTY or the next available scheduled business opening; and

b)  if by registered mail, on signed receipt.

## Article 33 - Bank Guarantee and Retention

33.1 CONTRACTOR shall provide COMPANY within fourteen (14) days of the date of the AGREEMENT a bank guarantee in an amount equal to 10% of the PRICE to be reduced to 5% at the date of issuance of the Certificate of Completion. Such guarantee shall be in a form acceptable to COMPANY and shall be valid until the end of the warranty period.

33.2 Should CONTRACTOR fail to provide the bank guarantee, COMPANY shall be entitled to withhold from any payment to CONTRACTOR a total retention equivalent to 10% of the PRICE to be reduced to 5% by COMPANY at the date of issuance of the Certificate of Completion. Such retention shall be held by COMPANY until the end of the warranty period.

## Article 34 - Parent Company Guarantee

Where CONTRACTOR is a subsidiary of another company, CONTRACTOR shall provide, at the request of COMPANY, an ultimate parent company guarantee in a form acceptable to COMPANY, within fourteen (14) days after the request of COMPANY.

## Article 35 - Amendments and Variations to the AGREEMENT

The AGREEMENT may only be amended, varied, changed or modified after execution of a VARIATION ORDER or amendment duly signed by both PARTIES in duplicate original. Nothing contained in any correspondence, discussions or minutes of meeting and the suchlike shall amend, vary, change or modify the AGREEMENT.

## Article 36 - Survival of Terms

Articles 16, 18, 19, 20, 23, 28 and 37 shall survive the completion and termination of the AGREEMENT.

## Article 37 - Governing Law and Disputes

37.1 The governing law of the AGREEMENT and any interpretation, construction and validation thereof shall be the Laws of England.

37.2 Any dispute arising out of or in relation to the AGREEMENT shall be referred to the exclusive jurisdiction of the English Courts of Justice, excluding those conflict of law rules and choice of law principles which would provide otherwise.

37.3 The proceedings of the dispute shall be held exclusively in the English language. Should documents be in languages other than English, the PARTY producing the documents shall procure, at its own expense, a certified translation thereof.

37.4 The occurrence of a dispute and any litigation thereof shall not be cause for disruption, interruption, stoppage, duress, work-to-rule, the withholding of documentation, delay and/or any other act or omission, whether passive or active, by the PARTIES in the diligent performance of each PARTIES' obligations under the AGREEMENT.

**SECTION 3 - SPECIAL CONDITIONS**

## GULF TRAN, INC.
P.O. Box 28 • Cut Off, Louisiana 70345
Phone (504) 693-6815

### DAILY LOG

COMPANY: Allgens
BLK: 354
AREA: Ship Shit

DATE: 12-20-78
M/V: Snapper

| | DEPARTURE | | ARRIVAL | |
|---|---|---|---|---|
| | TIME | PLACE | TIME | PLACE |
| | 0001 | Frankenville | 3:31 | Fwrld |
| | 3:31 | Fwrld | 3:33 | E/R |

PASSENGERS, CARGO (DETAIL #JTS. #ISX, TOOLS, ETC.)
0001 on chaner All Sees for North Bank Towing
E/R ti 55 35.5" 7 pass on Board 1230
with 11,000ss

FUEL ON BOARD (From Yesterday) 14,878 GALS.
FUEL RECEIVED TODAY 190 GALS.
FUEL USED TODAY GALS.
FUEL TRNSF'D FROM SHIPS TANKS GALS.
TOTAL FUEL ON BOARD AT END OF DAY 14,688 GALS.

LUBE OIL ON BOARD (From Yesterday) 28 GALS.
LUBE OIL RECEIVED TODAY GALS.
LUBE OIL USED TODAY GALS.
L.O. ON BOARD AT END OF DAY (SUBT) 28 GALS.

TOTAL RUNNING TIME HRS. 3 MIN 30
TOTAL STANDBY TIME HRS. 20 MIN 30

| ENGINE HOURS | MAIN | | GENERATOR | |
|---|---|---|---|---|
| | PORT | STRBD | PORT | STRBD |
| YESTERDAY TOTAL | 51½ | 51½ | 120 | 144 |
| TODAY TOTAL | 3½ | 3½ | 24 | 0 |
| NEW TOTAL | 55 | 55 | 144 | 144 |

| LUBE OIL USED | MAIN | | CLUTCH | | GENERATOR | |
|---|---|---|---|---|---|---|
| | PORT | STRBD | PORT | STRBD | PORT | STRBD |
| | / | / | / | / | / | / |

### WEATHER
| | MORNING | AFTERNOON |
|---|---|---|
| WIND | | |
| DIRECTION | | |
| SKIES | | |
| SEAS | | |

CREW-Each Sign His Name / HRS WORK
J Gamble
B Baxter
R Pitman
K Clemon

REMARKS & REPAIRS (NOTE ALL WORK DONE OR NEEDED)
Start Fuel 14,878
Start Lube 28 gal
Rob Pittman Clut

SIGNATURE:
MASTER

RECEIVED 2000


EXHIBIT B

```
1    asking him about services supplied to Newfield
2    at the time?
3         MR. LIRETTE:
4              Yes, there was obviously some
5    contract or some understanding to operate the
6    SUPPLIER for Newfield or whatever the company
7    was, Northpark Towing or something I saw in one
8    of the logs.
9         MR. SALLEY:
10             I just need a clarification.  You
11   can ask him about it.
12   BY  MR. LIRETTE:
13        Q.  Northbank, you know, charters or
14   Northpark, do you know if that charter for the
15   SUPPLIER was with Gulf Tran, or was it with
16   Bruce Investment?
17        A.  There was most likely no written charter
18   regarding that job; probably just verbal charter
19   between Gulf Tran and Northbank Towing.
20        Q.  So it's Gulf Tran's position that at the
21   time of this incident with Mr. Hines it was not
22   the bareboat charterer of the Motor Vessel
23   SUPPLIER?
24        A.  That's correct.
25        Q.  At the time of this incident in December
```

**DONEGAN, BARTELL & HENRY**
1-800-259-6519
FAX (985) 447-8895
www.doneganbartellhenry.com
Conference Rooms Available

POST OFFICE BOX 1293
100 WEST FIFTH STREET
THIBODAUX, LA  70302
PHONE: (985) 447-6519

PHONE (985) 868-2265



EXHIBIT

C

WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY    WC 00 03 13

Page    49

WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT

Insurer: LOUISIANA WORKERS' COMPENSATION CORPORATION       POLICY NO.       67444
Insured: LWCC SAMPLE POLICY

We have the right to recover our payments from anyone liable for an injury
covered by this policy. We will not enforce our right against the person or
organization named in the Schedule. (This agreement applies only to the extent
that you perform work under a written contract that requires you to obtain this
agreement from us.)

This agreement shall not operate directly or indirectly to benefit anyone not
named in this Schedule.

**Schedule**

Any person or organization to whom the named insured is obligated by written
contract to provide such waiver



EXHIBIT

D

(c) 1983 National Council On Compensation Insurance.
Effective date: 12/04/1998                    Date Printed: 12/04/1998