FILED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LA

2003 NOV 13  AM 8: 32

LORETTA G. WHYTE
          CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF THE            CIVIL ACTION
COMPLAINT OF BRUCE
INVESTMENT CO, INC.

                                NO:   00-0372

                                SECTION: "S" (2)


FINDINGS OF FACT AND CONCLUSIONS OF LAW

I. BACKGROUND

Bruce Investment Company, Inc. (Bruce Investment), the vessel owner, and Gulf Tran, Inc. (Gulf Tran), the vessel operator, filed a complaint for exoneration from or limitation of liability, and Todd Hines filed a claim for damages, asserting that he was injured as a result of the negligence of the owner and operator of the offshore supply vessel, the M/V SUPPLIER. The Louisiana Workers' Compensation Corporation (LWCC), the Longshore Harbor Worker's insurer of Omega Natchiq, Inc. (Omega), Hines's employer, intervened to recover the full amount of benefits and medical expenses paid to Hines. The objection to the right to subrogation was submitted to the court on memoranda

DATE OF ENTRY
NOV 13 2003

Fee____
Process____
X /Dktd____
✓ CtRmDep____
   Doc. No.____

following trial.

The court found that Hines's injury was caused by the negligent operation of the vessel. The court awarded Hines $842,544.28 plus legal interest, but limited the liability of Bruce Investment and Gulf Tran to $550,000, the stipulated value of the vessel.

The LWCC seeks reimbursement of $132,962.65 in weekly indemnity benefits and $86,448.67 in medical benefits paid to or on behalf of Hines until his death from causes unrelated to the accident.[1] All parties have stipulated that the total amount paid by the LWCC is $219,411.32.

## II. DISCUSSION

The LWCC contends that the waiver-of-subrogation provisions in its policy of insurance do not apply to Gulf Tran, the operator of an offshore utility vessel used to ferry cargo and supplies and occasionally personnel back and forth offshore.[2]

The interpretation of an insurance contract and its exclusions is a question of law. See Jarvis Christian Coll. V. Nat'l Union Fire Ins. Co. Of Pittsburgh, Pa., 197 F.3d 742, 746 (5th Cir. 2000). Under Louisiana law, the general rules of contract interpretation apply to determine the common intent of the parties to the contract. See Louisiana Ins. Guar. Ass'n v.

---

[1] Rachel Hines, Todd Hines's widow, has been substituted as the representative of the estate of Todd Hines.

[2] Testimony of Theresa Renee Baxter, Tr. at 12.

<u>Interstate Fire & Cas. Co.</u>, 630 So. 2d 759, 763 (La. 1994). The intent of the parties as reflected in the policy determines the extent of the coverage. <u>Id</u>. The words of an insurance policy are given their "general, ordinary, plain, and proper meaning . . . unless [they] have acquired a technical meaning." <u>Id</u>. If there is an ambiguity in the policy of insurance, the ambiguous provision is construed against the insurer because it is the party who furnished the text. La. Civ. Code Ann. art. 2056 (West 1987).

The LWCC policy issued to Omega includes the following waiver-of-subrogation endorsement:

> We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. (This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.)
>
> **This agreement shall not operate directly or indirectly to benefit anyone not named in this Schedule.**
>
> Schedule
>
> **Any person or organization to whom the named Insured is obligated by written contract to provide such waiver**

Hines exh. D (emphasis added).

The LWCC acknowledges that there is a written contract between Omega, Hines's employer, and Allseas Services, U.S.A. (Allseas), to perform offshore construction services aboard a production platform. The relevant portion of the contract between Omega and Allseas that addresses the waiver of

subrogation is Article 21.1 which provides:[3]

> Without limitation of its obligations and responsibilities CONTRACTOR [Omega] <u>shall maintain</u> for the duration of the AGREEMENT the following insurances with insurers satisfactory to COMPANY [Allseas] and with COMPANY GROUP[4] and COMPANY'S CLIENT named as additional insureds to the extent CONTRACTOR [Omega] has assumed liabilities under this AGREEMENT and <u>a waiver of the expressed and implied rights of subrogation</u>:
>
>   a) Employers Liability and/or (where the jurisdiction of where the WORK[5] is to be performed or under which the employees employed requires the same) Workmen's Compensation insurance covering personal injury to or death of the employees of CONTRACTOR [Omega] engaged in the performance of the WORK to the minimum value as required by any applicable legislation including extended coverage for working offshore, if applicable.

Hines exh. A (emphasis added).

The question is whether the written contract between Omega and Allseas, under which Omega is obligated to provide a waiver of subrogation, extends to Gulf Tran as a subcontractor of Allseas. Hines argues that the Omega contract with Allseas requires waiver of subrogation in favor of Allseas and the Allseas Group. He contends that Gulf Tran was a subcontractor of

---

   [3] All capitalized words in the form of the agreement shall have the meaning defined by the agreement.

   [4] "COMPANY GROUP" shall mean COMPANY, its subsidiaries, parent, affiliated and associated companies including its and their (sub)contractors, agents, servants, directors, officers and employees." Hines exh. A, article 1, section 1.1.

   [5] "WORK shall mean all the work, supplies and services to be performed by CONTRACTOR [Omega] in accordance with the AGREEMENT, as may be amended in accordance with the AGREEMENT." Hines exh. A, article 1, section 1.12.

4

Allseas through its oral charter agreement through North Bank Towing with Gulf Tran.

Traditionally, the purpose of subrogation was to work out "an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it." Couch on Insurance 3d § 222:8 (West 2000). Contractual subrogation, as opposed to legal subrogation, does not depend upon principles of equity, but is the product of an agreement between insured and insurer. Id. at § 222:31. Where the right of subrogation is provided for in an insurance policy, the right is measured by the terms of the policy. Id. § 222:23; See Holmes' Appleman on Insurance, Vol. Twenty-Three, § 141.5[A].

Because the right to subrogation is for the insurer's benefit, it can waive its subrogation right against particular entities in its policy with the insured. Couch at § 224:142. "An agreement to waive a subrogation right before a loss operates as a defense against an insurer's subrogation action." Id. at § 224:140. In the context of a worker's compensation policy, the employer's purchase of a waiver of subrogation from the insured creates a benefit for the employee by providing a collateral source, facilitating double recovery from worker's compensation and from the third-party tortfeasor. See Fontenot v. Chevron U.S.A., Inc., 676 So.2d 557 (La. 1996).

Under the written contract with Allseas, Omega was required

5

to purchase *inter alia* Workmen's Compensation insurance for its employees and to waive subrogation in favor of Allseas and its subcontractors. Omega purchased insurance from LWCC that included the waiver of subrogation required by the written contract. The language of the waiver-of-subrogation endorsement is broad, and the insurer which furnished the text did not limit its application to any category of subcontractor.

The Gulf Tran log indicates that the vessel was "on charter Allseas for North Bank Towing" under a verbal charter agreement between North Bank Towing and Gulf Tran. Exh. B and C. The log identifies Allseas as the "Company" for which it is providing transportation for seven passengers under arrangements made by North Bank Towing. Id. The court finds, therefore, that Gulf Tran was acting as a subcontractor of Allseas under the verbal charter agreement. Further, in its capacity as a subcontractor, Gulf Tran was part of the "Company Group" for which the waiver of subrogation provision of the policy is maintained through Omega's written contract with Allseas. Accordingly, LWCC has waived its right of subrogation under the policy of insurance and, it is not entitled to reimbursement of the benefits paid to or on behalf of Hines.

NEW ORLEANS, LOUISIANA, THIS 12 DAY OF November, 2003.

MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE