FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 MAY 24 P 3: 50

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In the Matter of the Complaint of Bruce | * | CIVIL ACTION |
| Investment Co., Inc., as the Owner of | * | |
| M/V SUPPLIER, and Gulf Tran, Inc., | * | |
| as the Operator of M/V SUPPLIER, Praying | * | NUMBER 00-0372 |
| for Exoneration from or Limitation of Liability | * | |
| Pursuant to 46 U.S.C. Section 183 *et seq.* | * | SECTION S MAG. 2 |

---

## SUPPLEMENTAL POST TRIAL MEMORANDUM

---

This matter was tried to the Court on December 9, 10, and 12, 2002. The Court has

requested additional memorandum on the issue of limitation of liability.

FACTS

At trial, Ross Bruce testified as the company representative. He was the president and

general manager of both Gulf Tran and Bruce Investment. The only other officer was his wife,

who was the secretary of both companies. Mr. Bruce testified that for the most part, he made all

decisions about the operations of both companies. There was no testimony that any other person

had responsibility over the operations of the corporately owned vessels.

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

Gulf Tran and Bruce Investment did not have a written charter agreement. Gulf Tran supplied the crew and operated the M/V Supplier for Bruce Investment under an oral agreement and as such is the owner pro hac vice.

Bruce Investment acquired the M/V Searcher around 1995. The vessel was built in 1980. After the purchase, the vessel was sandblasted and painted. Other minor engine room work was also done. A hull inspection was made at the time of purchase, but there was never an inspection of the settee/back's overall condition or an inspection to determine how it was attached to the wall of the vessel.

Prior to this incident, no one with Gulf Tran knew or attempted to find out how the settee/bunk backs were attached to the wall. No one knew how much weight the settee/bunk could support. Neither Bruce Investment nor Gulf Tran required any type of inspection of the settee/bunk prior to its use by passengers. Neither Bruce Investment nor Gulf Tran had established a company safety policy about the use of the settee/bunks on their vessels under any conditions including rough sea conditions. Neither company required a passenger safety orientation for passengers boarding their vessels, although that was required by Coast Guard regulation. Mr. Bruce admitted that passengers were carried infrequently and that this was the first time he was aware that the settee/bunk was used in 7 to 10 foot seas, however, he was aware that the settee/bunks were used by passengers, and that his vessels often traveled in 7 to 10 foot seas in the winter. Mr. Bruce had never been on any of his vessels in 7 to 10 foot seas and he had never established any safety policy or rules for passenger safety in rough conditions. Written instructions for rough weather at sea as required by the Coast Guard was posted on the vessel but never brought to the attention of the passengers. Neither Gulf Tran nor Bruce Investment

required regular meetings with its captains to review vessel operations or to discuss safety

concerns for passengers and crew, or to provide additional safety training.  Neither company

provided instruction or training for its captains beyond that required for their Coast Guard

license.  Neither company provided its captains with any type of weather information.  Neither

company had any specific safety policy regarding passengers and their seating arrangements

during rough seas.

LAW

The Limitation of Liability Act allows a vessel owner and owner pro hoc vice to limit its

liability to the value of the vessel if the owner is"without the privity or knowledge" of the

negligence that caused the loss.   46 U.S.C. § 183(a).  Privity means personal cognizance or

participation in the fault or negligence that causes the loss.  Sylve v. E. W. Gravolet Canning

Company, Inc., 278 F.Supp. 669 (E.D. La. 1967).  That same case defined knowledge as:

> not only personal cognizance but also the means of knowledge of which a party must
> avail himself in order to prevent a condition likely to produce or contribute to a loss.
> There can be no limitation of liability where the shipowner knew or should have known
> that his ship was unseaworthy due to some unsafe condition, or that it was improperly
> equipped or manned. Further, the owner is deemed to have privity and knowledge where
> he had means of knowledge or where knowledge would have been obtainable from
> reasonable inspection.   Sylve v.. E. W. Gravolet Canning Company, Inc., 278 F.Supp.
> 669, 673 (E.D. La. 1967).

The burden of proving the lack of privity or knowledge is on the vessel owner.  Colleman

v. Jahncke Service, Inc., 341 F.2d 956 (5th Cir. 1965).  The limitation proceeding is a two step

process with the claimant having to prove the negligence that caused the casualty, and the

shipowner then having to prove that it did not have privity or knowledge of that negligence.

Brister v. A.W.I., Inc., et al.,  946 F.2d 350 (5th Circ. 1991)  Privity or knowledge of a corporate

owner is that of its officers or employees that are sufficiently high in its chain of command that their actions would bind the corporation.  Colleman v. Jahncke Service, Inc., supra.  Under the facts of this case, Mr. Bruce was the president and general manger.  He did not delegate authority to any other employee to make them a managing agent or officer that could bind the corporation.  Therefore, the Court must look to the "privity or knowledge" of Mr. Bruce.

Claimant argues that the act of allowing passengers to sleep on the settee/bunk on the M/V Supplier without knowing what weight the bunk could hold, without knowing how the bunk was attached to the wall, and while heading into 7 to 10 foot seas was negligence that caused claimant's accident and injuries.  Claimant contends that the Master and/or crew should have prevented passengers from using the settee/bunk under these conditions rather than invite passengers to use the settee/bunk.  Management should have trained and or instructed its captains regarding safe procedure for passengers in rough weather including prohibiting the use of the settee/bunk under these conditions.

A corporate owner may be denied the right to limit liability for failing "to provide proper procedures for the maintenance of equipment, the training of the crew, or adequate checks to ensure the implementation of established safety procedures."  T. Schoenbaum, Admiralty and Maritime Law, (3rd Edition 2001), pgs. 824-825 and cases in footnote.  In Hodgen v. Forest Oil Corporation, 862 F.Supp. 1567, (W.D. Lafayette), an offshore oil platform worker was injured while swinging from the platform to a vessel. The vessel owner, A&A Boats, Inc., sought limitation of liability.  The evidence indicated that the company president was aware that swing rope transfers were done in 7 to 9 foot seas and that it did not train its captains how to accomplish a swing rope transfer.  The court refused to allow the corporate owner to limit its

liability because it did not instruct or train its captains in safe swing rope operations.

Even where proper instructions were given, the corporate owner may be denied limited liability for failure to assure that it's instructions were actually followed. In <u>Spencer Kellogg & Sons, Inc. v. Hicks</u>, 285 U.S. 502, 52 S.Ct. 450, 76 L.Ed. 903 (1932) the master of the vessel was given specific instructions not to operate the vessel when ice appeared in the river. Despite these instructions, the master operated the vessel with ice in the river, struck the ice, sank the vessel killing and injuring many of the passengers. The general manager was not aware that this instruction was violated since he was not present when the incident occurred.. The court refused to allow the owner to limit its liability because it's general manager " should not have rested upon the mere instruction to the master not to run through ice. Before allowing the ferriage operation he was under obligation to assure himself by inquiries or by personal inspection that the Linseed King should not incur the hazard of colliding, as she did, with ice floes in the river." <u>Spencer Kellogg & Sons, Inc. v. Hicks</u>, 285 U.S. 502, 510, 52 S.Ct. 450, 452, 76 L.Ed. 903 (1932). In <u>Avera v. Florida Towing, Inc.</u>, 322 F.2d 155 (5th Cir. 1963) the court refused to allow limitation where the master was negligent in hiring a deckhand in violation of company instructions. The court found the corporate president that established the instructions should have attempted to see that his instructions were followed. His failure to do so resulted in the corporation's denial of the right to limit liability. In <u>THE BESSIE J.</u>, 268 F. 66,(D.C.Mass. 1920), the owner of the barge had given orders that barge captains were to remain on board at night, when away from the home dock. The owner had no system of following up to see that the order was obeyed. The court refused to allow the vessel owner to limit because the owner through its manager knew or should have known that the orders were disobeyed and should have

followed up to see that its orders were obeyed.  Finally, in <u>Patton-Tully Transportation Company, v. Ratliff</u>, 797 F.2d 206,(5th Circ. 1986) a small launch sank while crossing the Mississippi River causing the death of a passenger in the launch.  The vessel sank because it was overloaded and operated incompetently.  The vessel owner argued that its general manager did not have knowledge or privity since the accident occurred after the general manager had left the job site.  The Court disagreed, finding that the corporate owner could not limit since the manager failed to oversee the operations and he should have known that the skiff was going to be used to transport employees.

In the case before this court, the corporate president/general manager was aware that passengers would use the settee/bunk on its vessels.  Although he claimed he did not know it was used in 7 to 10 foot seas, he knew the vessels would transport passengers under those sea conditions.  Neither he nor his company provided any instruction to its captains that the settee/bunks should not be used under those conditions.  He did not require safety orientation for passengers as required by the Coast Guard regulations.  He was not aware of how the settee/bunks were secured to the vessel walls and made no attempt to find out.  He was not aware of the safe weight load for the settee/bunk and he failed to instruct or train his employees in adequate safety for the passengers that were carried on the corporate vessels.  Like the general managers in the above cases, Mr. Bruce failed to properly supervise the operations of his vessels and the corporate owners should not be entitled to limit their liability.  For these reasons, the owner should not be entitled to limit liability.

Additionally, the master's knowledge at the commencement of a voyage is the owner's knowledge in cases of personal injury involving a seagoing vessel. 46 App. U.S.C.A. § 183(e); In re Diamond B Marine Services, Inc., 2001 WL 1164914 (E.D.La). The M/V Supplier was a seagoing vessel and the knowledge of Captain Unrue of the sailing conditions is imputed to Mr. Bruce. That knowledge should be sufficient to deny limitation.

Finally, the surety on the ad interim stipulation can be bound for a judgement up to the amount of the stipulation despite a finding by the Court of no limitation. This issue was specifically addressed by the U.S. Supreme Court in Hartford Accident & Indemnity Co. of Hartford v. Southern Pac. Co. et al., 273 U.S. 207, 47 S.Ct. 357 (1927). The Court held that the surety on the ad interim stipulation for value was not released of liability upon the denial of limitation and the court could render judgment in personam against the corporate owner and against the surety. The Court held that:

> It is quite evident from this that the stipulation under rule 54 et seq., is to be treated as a substitute for the vessel itself for all claims that may normally arise out of the character of litigation carried on under such rules. That litigation as we have seen may properly be carried to a complete settlement of all claims, without regard to whether the prayer for limitation of liability is denied or not. The stipulator must, therefore, pay in full on his undertaking to enable the court to pay the costs and make the pro rata distribution. Hartford Accident & Indemnity Co. of Hartford v. Southern Pac. Co. et al., 273 U.S. 207, 218, 47 S.Ct. 357, 360 (1927)

Claimant herein requests that the Court issue such a judgment and deny petitioner's claim for limitation.

Respectfully submitted,

**DANNY J. LIRETTE**      ( #8619)
**DEXTER A. GARY**       (#21292)
**PHILIP A. SPENCE**     (#21386)
**LIRETTE, GARY & SPENCE, L.L.C.**
10 Professional Drive
P.O. Box 2968
Houma, Louisiana 70361
Telephone: (985) 876-2997
Facsimile:  (985) 868-2310
Counsel for Plaintiff(s)

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this _14th_ day of ___March___, 2003, served a

copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing same

through the United States Mail, properly addressed and first class postage prepaid and/or

facsimile.

DANNY J. LIRETTE
DEXTER A. GARY